# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

LAUREN ANTIDORMI MORAN,

    Plaintiff,

    v.

UNITED SERVICES AUTOMOBILE
ASSOCIATION (USAA),

    Defendant.

NO. 3:18-CV-2085

(JUDGE CAPUTO)

## **MEMORANDUM**

Presently before me is the Motion to Dismiss Count II of Plaintiff's Amended Complaint (Doc. 12) filed by Defendant United Services Automobile Association a/k/a Garrison Property & Casualty Insurance Company ("Defendant"). Plaintiff Lauren Antidormi Moran ("Plaintiff") commenced this action against Defendant contending that it breached the terms of the parties' motor vehicle insurance agreement and acted in bad faith in violation of Pennsylvania law, 42 Pa. C.S.A. § 8371, in failing to offer a reasonable amount of uninsured motorist benefits. Plaintiff's bad faith claim was previously dismissed without prejudice to her pleading additional factual matter to support such a claim. Defendant has again moved to dismiss that claim. Because Plaintiff fails to state a bad faith cause of action, the motion to dismiss will be granted and the bad faith claim will be dismissed with prejudice.

## I. Background

The facts as alleged in the Amended Complaint are as follows:

On February 8, 2018, Plaintiff was injured in a motor vehicle accident in Lackawanna County, Pennsylvania with Thomas Conklin, an uninsured motorist who was responsible for the accident. (*See* Doc. 10, ¶¶ 3, 5). Plaintiff sustained a herniated disc at C4-5 and a central disc protrusion and annular at C5-6. (*See id.* at ¶ 10). Plaintiff had no previous neck injuries before the accident. (*See id.* at ¶ 11).

At the time of the accident, Plaintiff was insured under an automobile policy issued by Defendant. (*See id*. at ¶ 4). That policy included uninsured motorist coverage in the amount of $50,000.00. (*See id*. at Ex. "D").

According to Plaintiff's physicians, "she may need surgery to repair her neck and will be out of work for several months." (*Id*. at ¶ 13). Plaintiff has limited medical benefits of $5,000.00, and she has approximately $2,000.00 of benefits remaining. (*See id*. at ¶¶ 14-15). If Plaintiff is required to have surgery, she will miss several months of work in her capacity as a caregiver earning $550.00 a week. (*See id*. at ¶¶ 12-13). Plaintiff believes that if she has surgery and misses work, she will have lost wages in excess of $10,000.00. (*See id*. at ¶ 16).

Plaintiff sought to arbitrate her claim for uninsured motorist benefits, but Defendant denied that request. (*See id*. at ¶ 8). Defendant offered $6,000.00 to resolve the uninsured motorist claim on August 20, 2018, and, just over a week later, increased that offer to $10,000.00 without any additional evidence. (*See id*. at ¶ 11 and Exs. "A"-"B").

On September 26, 2018, Plaintiff commenced litigation by filing her complaint in the Court of Common Pleas of Lackawanna County, Pennsylvania asserting claims for breach of contract (Count I) and bad faith (Count II). (*See* Doc. 1-2, *generally*). Defendant timely removed the action to this Court. (*See* Doc. 1, *generally*). Defendant moved to dismiss the bad faith claim, (*see* Doc. 2, *generally*), and that motion was granted, but Plaintiff was given leave to file an amended complaint. (*See* Doc. 9, *generally*).

Plaintiff timely filed her Amended Complaint on January 2, 2019. (*See* Doc. 10, *generally*). On January 16, 2019, Defendant again moved to dismiss the bad faith claim. (*See* Doc. 12, *generally*). The motion to dismiss has now been fully briefed and is ripe for disposition.

## II. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a

complaint, in whole or in part, for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). "Under the 'notice pleading' standard embodied in Rule 8 of the Federal Rules of Civil Procedure, a plaintiff must come forward with 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 147 (3d Cir. 2014) (quoting Fed. R. Civ. P. 8(a)(2)).

When resolving a Rule 12(b)(6) motion, "a court must consider no more than whether the complaint establishes 'enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary elements' of the cause of action." *Trzaska v. L'Oreal USA, Inc.*, 865 F. 3d 155, 162 (3d Cir. 2017) (quoting *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016)). In reviewing the sufficiency of a complaint, a court must take three steps: (1) identify the elements of the claim; (2) identify conclusions that are not entitled to the assumption of truth; and (3) assume the veracity of the well-pleaded factual allegations and determine whether they plausibly give rise to an entitlement to relief. *See Connelly*, 809 F.3d at 787 (citations omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).

### III. Discussion

Defendant seeks dismissal of the bad faith claim in Count II of the Amended Complaint. (*See* Doc. 12, *generally*). Pennsylvania law allows an insured party to receive damages and other relief if the insurer acts in bad faith toward the insured party. *See* 42 Pa. C.S.A. § 8371. Section 8371 states:

> § 8371. Actions on insurance policies
>
> In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:
>
> (1) Award interest on the amount of the claim from the date

3

> the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.
>
> (2) Award punitive damages against the insurer.
>
> (3) Assess court costs and attorney fees against the insurer.

*Id*.

"[I]n order to recover in a bad faith action, the plaintiff must present clear and convincing evidence (1) that the insurer did not have a reasonable basis for denying benefits under the policy and (2) that the insurer knew of or recklessly disregarded its lack of a reasonable basis." *Rancosky v. Washington Nat'l Ins. Co.*, 170 A.3d 364, 365 (Pa. 2017) (citing *Terletsky v. Prudential Prop. & Cas. Ins. Co.,* 649 A.2d 680 (Pa. Super. Ct. 1994)). However, "proof of an insurance company's motive of self-interest or ill-will is not a prerequisite to prevailing in a bad faith claim under Section 8371 . . . . While such evidence is probative of the second *Terletsky* prong, . . . the insurer's knowledge or recklessness as to its lack of a reasonable basis in denying policy benefits is sufficient. " *Id*.

In deciding whether an insurer had a reasonable basis for denying benefits, a court must examine what factors the insurer considered in evaluating a claim. *See Terletsky,* 649 A.2d at 688-89. "Bad faith claims are fact specific and depend on the conduct of the insurer vis à vis the insured." *Condio v. Erie Ins. Exchange*, 899 A.2d 1136, 1143 (Pa. Super. Ct. 2006) (citing *Williams v. Nationwide Mutual Ins. Co.*, 750 A.2d 881, 887 (Pa. Super. Ct. 2000)). "[M]ere negligence is insufficient for a finding of bad faith under Section 8371 . . . ." *Rancosky*, 170 A.3d at 374. However, recklessness on the part of the insurer can support a finding of bad faith. *See id*.

Plaintiff pleads the following in the Amended Complaint:

> Defendants' [sic] conduct and actions in repeatedly failing to pay underinsured [sic] benefits to plaintiff and/or to offer to settle Plaintiff's underinsured [sic] benefits claim, constitutes bad faith on the part of defendant toward its insured, Lauren Antidormi Moran, in that defendant:
>
> a. failed to promptly and reasonably respond to Plaintiff's counsel's demands for prompt payment of Plaintiff's

4

underinsured [sic] benefits so that she would exhaust her 1st party medical benefits;

b. failed to properly investigate Plaintiff's claim;

c. failed to exercise the utmost good faith and discharge of its statutory and contractual duties to the Plaintiff by failing to properly evaluate her claim in light of her injuries, lost wages and her 1st party medical benefits;

d. failed to attempt in good faith to effectuate a prompt, fair and equitable settlement of Plaintiff's underinsured [sic] benefits claim by failing to properly evaluate her claim in light of her injuries, lost wages and her 1st party medical benefits;

e. failed to adopt and implement reasonable standards for the prompt investigation and payment of underinsured [sic] benefits claim arising out of Plaintiff's automobile insurance contract by failing to properly evaluate her claim in light of her injuries, lost wages and her 1st party medical benefits; [and]

f. failed to act promptly and [sic] timely fashion responding to Plaintiff's counsel.

(*See* Doc. 10, ¶ 34).

As I explained in dismissing the prior iteration of this claim, such averments are nothing more than "bare-bones conclusory allegations which are not sufficient to state a bad faith claim." *Meyers v. Protective Ins. Co.*, No. 16-1821, 2017 WL 386644, at *9 (M.D. Pa. Jan. 27, 2017). Indeed, much of Defendants' alleged bad faith conduct has been found to constitute "legal conclusions rather than factual allegations." *Rickell v. USAA Cas. Ins. Co.*, No. 18-1279, 2018 WL 5809865, at *3 (M.D. Pa. Nov. 6, 2018). Plaintiff has pled no facts to support the allegations in Subparagraphs (b) and (f), and such averments have been held to be conclusory. *See id*. ("Allegations that Insurer failed 'to properly investigate and evaluate plaintiff's underinsurance claim' and that 'defendant knew or recklessly disregarded the fact that it had no reasonable basis for its above conduct' are conclusory statements and recitations of the elements of the claim that need not be accepted as true."). Likewise, the averments in Subparagraphs (a), (d), and (e) "regarding how Defendant handled the claim after receipt are conclusory without additional factual support that would inform the court

why Defendants actions are unreasonable." *See id.*; *see also Meyers*, 2017 WL 386644, at *9 ("Whether something is untimely (or, more precisely, unreasonably untimely) may be an element of a bad faith claim only to the extent that it itself has sufficient support; otherwise, an allegation that a claim was not timely paid and investigated is a legal conclusion which a court must disregard at a motion to dismiss stage."); *Atiyeh v. Nat'l Fire Ins. Co. of Hartford*, 742 F. Supp. 2d 591, 599 (E.D. Pa. 2010) ("knowingly or recklessly disregarding the lack of a reasonable basis to deny plaintiff's claim" is a legal conclusion). And, Plaintiff's allegations that Defendant "acted in bad faith because it failed or refused to act in good faith . . . are not only conclusory, but are also circular and prove nothing." *Meyers*, 2017 WL 386644, at *9. Thus, these conclusory statements, insofar as they are not supported by factual allegations, are insufficient to state a bad faith cause of action.

In resolving Defendant's motion to dismiss the bad faith claim in the Complaint, I explained that, once stripped of its conclusory statements, Plaintiff pled only:

> (1) Plaintiff had an automobile insurance policy with Defendant; (2) Plaintiff suffered injuries in an automobile accident caused by Thomas Conklin, an uninsured motorist, on February 8, 2018; (3) Plaintiff sought uninsured motorist benefits from Defendant; (4) on August 20, 2018, Defendant offered Plaintiff $6,000.00 to settle the claim; (5) Defendant increased that offer to $10,000.00 the next week without being provided any additional documentation; and (6) a month later Plaintiff commenced this litigation. The claim, at its core, is that Defendant acted in bad faith in valuing the uninsured motor claim. Without additional factual matter, such threadbare allegations do not state a violation of § 8371.

(Doc. 8, 5-6). Now, in addition to the facts identified above, Plaintiff has included in the Amended Complaint the following to support her claim of bad faith: (1) she never had neck problems prior to the accident; (2) she makes $550.00 per week as a caregiver; (3) she may require surgery that would cause her to miss several months of work, which she believes will result in lost wages in excess of $10,000.00; and (4) if she has surgery, she will exhaust her remaining balance of $2,000.00 of medical benefits. (*See* Doc. 10, ¶¶ 11-16).

While Plaintiff sets forth additional factual matter in the Amended Complaint, she again fails to sufficiently plead facts for which it could plausibly be inferred that Defendant acted in bad faith in valuing her claim. Indeed, courts have consistently held that a dispute or discrepancy in the valuation of a claim between the insurer and the insured is not alone indicative of bad faith. *See*, *e.g.*, *Smith v. State Farm Mut. Auto. Ins. Co.*, 506 F. App'x 133, 136 (3d Cir. 2012) ("bad faith is not present merely because an insurer makes a low but reasonable estimate of an insured's damages."); *McDonough v. State Farm Fire & Cas. Co.*, No. 18-2247, 2019 WL 480139, at *2-3 (E.D. Pa. Feb. 7, 2019) ("disagreement over the settlement amount is not unusual" and does not by itself state a bad faith claim); *Pfister v. State Farm Fire & Cas. Co.*, No. 11-799, 2011 WL 3163184, at *4 (W.D. Pa. July 26, 2011) (discrepancy in parties' valuation of claim "alone is not evidence of bad faith; Pennsylvania law generally does not treat as bad faith an insurer's low but reasonable estimate of an insured's losses"); *Williams v. Hartford Cas. Ins. Co.*, 83 F. Supp. 2d 567, 576 (E.D. Pa. 2000) ("negotiating by offering a figure at the low end of the settlement range does not necessarily constitute bad faith, particularly when the valuation of the injuries and damages of a claim is difficult").

This point was explained by the United States District Court for the Eastern District of Pennsylvania in *West v. State Farm Insurance Co.*, No. 16-3185, 2016 WL 4264240, at *2 (E.D. Pa. Aug. 11, 2016). In that case, the plaintiff claimed that the insurer engaged in bad faith when it offered $1,000.00 to settle $8,232.00 worth of medical bills. *See id*. Such facts, however, were "not sufficient, as a matter of law, to sustain a claim for bad faith. Plaintiff has not presented facts to show that Defendant "knew or recklessly disregarded its lack of reasonable basis in" in offering a 'low-ball' offer. A 'low-ball' offer alone does not suffice to support a claim for bad faith. '[B]ad faith is not present merely because an insurer makes a low but reasonable estimate of an insured's damages.'" *West v. State Farm Ins. Co.*, No. 16-3185, 2016 WL 4264240, at *2 (E.D. Pa. Aug. 11, 2016) (quoting *Johnson v. Progressive Ins. Co.*,

987 A.2d 781, 784 (Pa. Super. Ct. 2009)). There, just like here, the plaintiff pled no facts to support that the valuation of the claim was in bad faith "rather than made as part of the ordinary course of negotiations between insurers and insureds." *Id*.

Plaintiff's argument that the valuation of $10,000.00 is facially insufficient in light of potential medical expenses exceeding Plaintiff's limited medical benefits and a possible wage loss in excess of $10,000.00 if she is required to have surgery also do not demonstrate that Defendant lacked a reasonable basis to deny benefits and/or that Defendant recklessly disregarded a lack of reasonable basis for its actions. For one, these allegations are entirely speculative. (*See* Doc. 10, ¶ 13 ("may need surgery"), ¶ 16 ("if she has surgery," she will suffer lost wages)). Further, these facts do not demonstrate that the offer was facially unreasonable based on the allegations in the Amended Complaint, and, even if they did, it does not establish that Defendant "acted in bad faith rather, it might have negligently failed to investigate and evaluate, leading to an unreasonable settlement offer." *Id*. (quoting *Sypeck v. State Farm Mut. Auto Ins. Co.*, No. 12-324, 2012 WL 2239730, at *3 (M.D. Pa. June 15, 2012 (Caputo, J.)).

For these reasons, Plaintiff's bad faith claim when stripped of its conclusory allegations unsupported by factual averments still amounts to her view that Defendant engaged in bad faith in valuing the claim. In other words, Defendant's bad faith is evidenced by its low settlement offer. But, given the allegations in the matter *sub judice*, Plaintiff has not pled factual support for finding the settlement offer unreasonable for purposes of a bad faith claim. *See Northwestern Mut. Life Ins. Co. v. Babayan*, 430 F.3d 121, 137 n.22 ("an insurer's low, but reasonable estimate of damages or loss [does not] constitute bad faith"); *cf. Seto v. State Farm Ins. Co.*, 855 F. Supp. 2d 424, 430 (W.D. Pa. 2012) ("low-ball offers which bear no reasonable relationship to an insured's actual losses can constitute bad faith within the meaning of § 8371."). So Plaintiff fails to state a bad faith claim. *See West*, 2016 WL 4264240, at *3; *see also Sypeck*, 2012 WL 2239730, at *3. The bad faith claim will be dismissed, and because Plaintiff has already been given the opportunity to cure the

deficiencies with respect to this claim but has failed to do, further amendment would be futile. The bad faith claim will therefore be dismissed with prejudice.

## IV. Conclusion

For the above stated reasons, Defendant's motion to dismiss Count II of the Amended Complaint will be granted and the bad faith claim be dismissed with prejudice.

An appropriate order follows.

<div style="display:flex; justify-content:space-between;">
February 14, 2019  
Date

/s/ A. Richard Caputo  
A. Richard Caputo  
United States District Judge
</div>